UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FABIAN E.[1],

       Plaintiff,

v.                                                         1:21-CV-187 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____

## DECISION AND ORDER

Plaintiff Fabian E. brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking review of the decision made by the Commissioner of the Social Security Administration finding that he was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 5. The Commissioner responded and cross-moved for judgment on the pleadings. Dkt. 7. For the reasons below, the Court denies Plaintiff's motion and grants the Commissioner's cross motion.

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this decision and order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

This action originates from Plaintiff's application for Supplemental Security Income ("SSI") filed on June 21, 2018. Tr. 82.[2] Plaintiff's application was initially denied, and he requested a hearing before an administrative law judge ("ALJ"). Tr. 29-62. Following the hearing, ALJ Paul W. Goodale issued a decision finding that Plaintiff was not disabled. Tr. 12-28. Plaintiff's request for Appeals Council review was denied, after which he commenced this action. Tr. 1-6; Dkt. 1.

## LEGAL STANDARDS

### I.  District Court Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). The Commissioner's factual findings are conclusive when supported by substantial evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).

While the Court does not determine *de novo* whether the claimant is disabled, the Commissioner's conclusions of law are not given the same deferential standard

---

[2] The filing at Dkt. 4 is the transcript of the proceedings before the Social Security Administration. All references to Dkt. 4 are hereby denoted "Tr. __."

of review. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). If there is a reasonable doubt as to whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant will be deprived of the right to have his disability determination made according to correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)) (holding that the Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the . . . Act.").

## II.   Disability Determination

Disability under the Act is determined under a five-step test. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); 20 C.F.R. § 416.920. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities and is normally done for pay or profit. *Id.* § 416.972. If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. *Id.* § 416.920(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(c). Absent such impairment, the claimant may not claim disability. *Id.*

Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If such criteria are met, then the claimant is declared disabled. *Id.* § 416.920(d).

Even if the claimant is not declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). The RFC is a holistic assessment of the claimant's medical impairments, both severe and non-severe, that evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *Id.* § 416.945.

In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 416.920(f). If the claimant is capable of performing past relevant work, then the claimant is not disabled. *Id.* § 416.960(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, the analysis proceeds to the fifth and final step. *Id.* § 416.920(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her or his RFC, age, education, and work experience. 20 C.F.R. § 416.960(c). Here, the burden of proof shifts from the claimant to the Commissioner to prove that a significant number of jobs in the national economy exists that the claimant can perform given her/his

RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(g), 416.960(c); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## DISCUSSION

### I.   The ALJ's Decision

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since filing his application on June 21, 2018. Tr. 15. The ALJ found that Plaintiff suffered from the following severe impairments: recurring hernias status post multiple ventral wall repair; obesity; hypertension; status post right knee meniscus repair in 2014; and lumbar degenerative disc disorder. Tr. 17. The ALJ concluded that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18.

After considering the entire record, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with the following limitations:

> occasionally stoop, crouch, crawl, kneel and balance, could occasionally climb ramps or stairs, but cannot climb ladders, ropes or scaffolds. He must avoid concentrated exposure to workplace hazards such as dangerous machinery (excluding motor vehicles) and unprotected heights. [Plaintiff] could not do assembly-line type work (i.e., outwardly paced, working in close tandem [with] co-workers), but could do individual table/bench work.

Tr. 19.[3]

---

[3] Light work involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may

5

The ALJ found that Plaintiff had no past relevant work. Tr. 23. The ALJ concluded that Plaintiff was not disabled because his age, education, work experience, and RFC allowed him to perform jobs existing in significant numbers in the national economy. Tr. 23-24. The ALJ concluded that Plaintiff had not been under a disability since his application date of June 21, 2018. Tr. 24.

## II. Plaintiff's Argument

Plaintiff argues that the RFC finding is unsupported by substantial evidence because the ALJ relied on "stale" medical opinions and "his own lay interpretation of raw medical data." Dkt. 5 at 8-14. Plaintiff asserts that the ALJ should have further developed the record by obtaining additional medical opinion evidence. *Id.* at 13-14.

## III. Analysis

A plaintiff's RFC is the most he can do despite his limitations. 20 C.F.R. § 416.945(a)(1). An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ. *Id.* § 416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case

---

be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

6

record."), *see id.* § 416.946(c) ("the administrative law judge or the administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual functional capacity").

In general, "medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016). Although "a medical opinion is not necessarily stale simply based on its age," *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018), a medical opinion may be stale if it does not account for a plaintiff's deteriorating condition, *Carney v. Berryhill*, No. 16-CV-269, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017). Remand may be warranted where more recent evidence in the record "directly contradict[s] the older reports of [plaintiff's] functioning on which the ALJ relied" and the ALJ failed to fully analyze the more recent evidence. *Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642, 644 (2d Cir. 2020).

On August 28, 2018, Plaintiff underwent an internal medicine consultative examination with Rita Figueroa, M.D. Tr. 300-304. Plaintiff reported a history of ventral hernia, history of gunshot wound to the abdomen sustained in 2003, two prior hernia repairs and an upcoming third repair, sleep apnea, hypertension, and dizziness. Tr. 300-301. On examination, he declined to squat, he had a massive ventral hernia, he declined lumbar flexion due to pain, and limited right knee flexion and extension. Tr. 302-303. Dr. Figueroa diagnosed Plaintiff with recurrent

ventral hernia repair, sleep apnea, hypertension, and morbid obesity. Tr. 303. Dr. Figueroa opined that Plaintiff would have moderate difficulty with repetitive bending, heavy lifting, and carrying. Tr. 303. An x-ray of the right knee showed no acute bony abnormality. Tr. 305. The ALJ found that Dr. Figueroa's opinion was persuasive, reasoning it was consistent with exams showing mostly normal functioning and strength, and it showed that Plaintiff would be capable of a reduced range of light exertional tasks. Tr. 22.[4]

Plaintiff argues that after Dr. Figueroa offered her opinion, his condition deteriorated. Dkt. 5. Plaintiff asserts he experienced left knee pain with imaging showing degenerative changes (Tr. 330-335), back pain with imaging of the lumbar spine showing degenerative disc disease and facet osteoarthritis in the lower lumbar spine with transitional anatomy, and imaging of the thoracic spine showing spondylosis (Tr. 358-373); and he had worsening abdominal pain that resulted in another hernia surgery on October 14, 2019, which led to continued abdominal pain and fluid collection (Tr. 312-320, 336-357). Dkt. 5 at 10.

Contrary to Plaintiff's assertion, his knee and back pain were acute in nature and not proof that his physical condition was deteriorating. *Tammy C.-J. v. Comm'r*

---

[4] The record also contains the administrative finding provided by non-examining State agency medical consultant, Dr. Stouter. On September 25, 2018, Dr. Stouter reviewed Plaintiff's file as it existed on that date and opined that Plaintiff could perform medium exertion work with about six hours of standing and walking in an 8-hour workday, and about six hours of sitting in an 8-hour workday. Tr. 87-90. The ALJ found that Dr. Stouter's opinion was not fully persuasive, as it did not take into account the "latter adduced evidence or the claimant's subjective pain complaints." Tr. 22. Based on all the record evidence, the ALJ concluded that Plaintiff had a more restrictive RFC than provided by Dr. Stouter. Tr. 18.

*of Soc. Sec.*, 523 F. Supp. 3d 368, 377 (W.D.N.Y. 2021) (acute physical conditions were not proof of deteriorating impairments and therefore did not render medical opinion stale). As summarized by the ALJ in his decision, Plaintiff sought emergency treatment for knee pain, was treated with pain medication, and discharged home. Tr. 20, 332. Plaintiff sought emergency treatment for back pain after a fall. Tr. 20, 362. He was treated with medication and discharged home. Tr. 365. Therefore, the ALJ properly considered treatment notations and nothing in the records "directly contradict" any medical opinion in the record. *Blash*, 813 F. App'x at 644 (remand required where subsequent records directly contradicted the older reports of plaintiff's functioning on which the ALJ relied).

Substantial evidence in the record supports the conclusion that Plaintiff's treatment for knee and back pain did not render opinion evidence stale. In his application for benefits, Plaintiff did not allege disability due to knee or back impairments. Tr. 192. Plaintiff did not allege knee or back impairments in his appeal. Tr. 214, 251. At the hearing, Plaintiff testified that he had right knee surgery about five years prior. Tr. 36. Plaintiff testified that surgery helped, but not 100 percent, and that he experienced late day pain. *Id.* Between his filing date of June 2018 (Tr. 82) and the July 2020 ALJ decision, Plaintiff sought emergency treatment for knee pain once in 2018 (Tr. 330). Plaintiff sought emergency treatment for back pain in June 2019 after he fell in his kitchen (Tr. 362-373) and again in August of 2019 (Tr. 358-361). Plaintiff did not seek any additional treatment for ongoing knee and back pain. No provider who treated Plaintiff for his

9

acute knee and back pain provided functional limitations. Therefore, Plaintiff's knee and back impairment did not deteriorate, nor did Plaintiff undergo surgery for these impairments after the consultative examiner issued an opinion. *See Biro,* 335 F. Supp. 3d at 470 (finding medical opinion to be stale when issued five years before ALJ decision and before two subsequent surgeries).

Plaintiff's ongoing treatment for hernia, including hernia surgery in October 2019, does not demonstrate a deteriorating condition. On November 25, 2019, Plaintiff treated at an emergency facility for worsening abdominal pain and decreased appetite since his recent component separation surgery on October 14, 2019, and he was prescribed antibiotics. Tr. 312-320. On March 3, 2020, Plaintiff treated at another emergency facility for abdominal pain and wound infection of his abdomen. Tr. 347-357. On March 24, 2020, Plaintiff treated at an emergency facility for abdominal pain, he was advised to take Tylenol for pain, and he was to follow up with his outpatient surgeon. Tr. 336-346. As explained by the ALJ, all other abdominal findings were stable and had not worsened; therefore, Plaintiff appeared to have had acute exacerbations of his hernia symptoms. Tr. 21.

In sum, Plaintiff's knee and back pain, and exacerbations of hernia symptoms, were acute in nature and did not render Dr. Figueroa's opinion stale. In addition, the ALJ fully analyzed all evidence in the record, including evidence provided after Dr. Figueroa provided her opinion, and nothing in the subsequent reports contradicted her opinion on functioning. *Blash,* 813 F. App'x at 644

(remand required where subsequent records directly contradicted the older reports of plaintiff's functioning on which the ALJ relied).

Next, Plaintiff argues that "the ALJ's RFC was based on his own lay interpretation of raw medical data because he relied on stale opinion evidence, thereby not really relying on medical opinions in forming the RFC, it is not supported by substantial evidence." Dkt. 5 at 12. Plaintiff's argument fails.

An ALJ's RFC determination is not fatally flawed merely because it was formulated absent a medical opinion. The Second Circuit has held that "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022); *see Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (where "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required"); *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

11

Indeed, an RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ. *See* 20 C.F.R. § 416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."), *see id.* § 416.946(c) ("the administrative law judge or the administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual functional capacity"). Additionally, the regulations direct an ALJ not to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." *Id.* § 416.920c. Therefore, Plaintiff's assertion that the ALJ's RFC determination was the product of legal error because it was not supported by a specific medical opinion is without merit.

Plaintiff makes the related argument that the ALJ failed to engage in a function-by-function assessment "tethering the RFC to the record" and his rationale cannot be gleaned from the determination. Dkt. 5 at 12. The Second Circuit has held that the failure to engage explicitly in a function-by-function analysis as part of the RFC assessment does not constitute a *per se* error requiring remand. *See Cichocki v. Astrue*, 729 F.3d 172, 174 (2d Cir. 2013). The relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence. *Cichocki*, 729 F.3d at 177.

The ALJ's RFC was proper and supported by substantial evidence. The ALJ discussed Plaintiff's treatment for sleep apnea, which included the use of a CPAP machine and a recommendation to lose weight. Tr. 20, 322-28. As the ALJ

12

explained, despite some ongoing complaints of fatigue, Plaintiff reported sleeping for seven hours per night and that his sleep quality had improved with the use of a CPAP machine. Tr. 20, 322. The ALJ also discussed Plaintiff's very minimal and intermittent treatment for left knee, back, and right leg pain. Tr. 20. Plaintiff sought emergency room care for his musculoskeletal pain complaints on three occasions; during all visits he was treated with pain medication, which significantly improved his symptoms, and discharged home in stable and improved condition on the same day. Tr. 20, 330-332, 360, 365.

The ALJ also discussed Plaintiff's treatment for a longstanding history of recurring hernias. Tr. 20-21. Plaintiff reported a history of two hernia surgeries several years before his alleged disability onset date, as well as a hernia recurrence in 2017 when he performed heavy lifting. Tr. 294, 300. As the ALJ discussed, outpatient surgery was recommended to repair Plaintiff's "small" hernia in June 2018. Tr. 20. Plaintiff did not undergo surgery until more than one year later, in October 2019. Tr. 21. Plaintiff experienced post-surgical abdominal pain following the removal of a drain in November 2019, which was addressed with antibiotics. Tr. 21. He also developed a post-surgical acute abscess for which he sought treatment in March 2020. *Id.* Because Plaintiff required no additional treatment for hernia symptoms or post-surgical hernia complications after March 2020, the ALJ accurately observed, "this appear[ed] to have been an acute exacerbation of his hernia symptoms, which should resolve with treatment." *Id.*

The ALJ further relied on Plaintiff's physical examinations that revealed minimal abnormalities. Tr. 20-21. Indeed, despite some isolated instances of tenderness in his back and left knee (Tr. 331, 359), Plaintiff routinely exhibited normal range of motion in his back, neck, and extremities, with full (5/5) muscle strength, normal coordination, intact sensation, and no joint swelling or neurological deficits (Tr. 295, 314, 317, 322, 331, 338, 349-50, 359, 363).

Lastly, the ALJ explained that the RFC finding was supported by the medical opinions and prior administrative medical findings. Tr. 22-23. The ALJ explained that, "[a]lthough vague as to specific functions," Dr. Figueroa's opinion was "persuasive and consistent with exams showing mostly normal functioning and strength." Tr. 22. The ALJ assessed a more restrictive RFC than provided by Dr. Stouter. Tr. 22-23.

The ALJ explained that he "included limitations that address[ed] [Plaintiff's] pain complaints, dizziness, medication side effects, and [. . .] limited him to light exertional tasks, with occasional postural maneuvers, but no climbing of ladders, ropes, or scaffolds, and avoiding concentrated exposure to hazards, with no assembly type work." Tr. 22-23. Therefore, the ALJ's rationale for the limitations included in the RFC finding can be gleaned from the decision. *See Cichocki,* 729 F.3d at 178 n.3 (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) ("An ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision.").

Lastly, Plaintiff argues that the ALJ failed to develop the record "for additional opinion evidence in light of the obvious gap in the record due to the stale opinion evidence." Dkt. 5 at 13. The record did not contain a gap and was sufficient for the ALJ to make a determination. *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (the ALJ "is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability") (internal citations omitted).

## CONCLUSION

For these reasons, the Court **GRANTS** the Commissioner's cross motion for judgment on the pleadings (Dkt. 7) and **DENIES** Plaintiff's motion for judgment on the pleadings (Dkt. 5). The Clerk of the Court will close this case.

SO ORDERED.

Dated:   September 11, 2023
         Buffalo, New York

                                          _____
                                          JOHN L. SINATRA, JR.
                                          UNITED STATES DISTRICT JUDGE